UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIV. 06-4016-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER DENYING |
| TWO BANK ACCOUNTS | ) | GOVERNMENT'S MOTION TO |
| DESCRIBED AS: | ) | STRIKE AND FOR DEFAULT |
| | ) | JUDGMENT |
| Bank Account | ) | |
| In the amount of $197,524.99 | ) | |
| Bank of America | ) | |
| Seattle, Washington | ) | |
| | ) | |
| Bank Account | ) | |
| In the amount of $20,537.42 | ) | |
| Bank of America | ) | |
| Seattle, Washington | ) | |
| | ) | |
| Defendants. | ) | |

The government moves to strike Timothy Jewell's Verified Answer.  The

government also moves for judgment of default as to any claims which Jewell

may have in the defendant property.[1]  Jewell opposes the motion.  The motion

is denied.

---

[1] The court notes that the Clerk's Entry of Default as to Timothy Jewell
(Docket 75) was erroneously entered in this case.  Accordingly, the court will set
aside the Clerk's Entry of Default and consider the government's motion to
strike and for default judgment.

## FACTUAL BACKGROUND

On January 20, 2006, the government filed a verified complaint seeking forfeiture against two defendant funds, namely a bank account in the name of Dataport, located at the Bank of America, Seattle, Washington, in the amount of $197,524.99; and a bank account in the name of Turbo ISP, located at the Bank of America, Seattle, Washington, in the amount of $20,537.42.  Docket 1.  The government served Jewell with copies of the amended verified complaint of forfeiture, notice of civil forfeiture, and the summons and warrant for arrest on January 30, 2006.  Docket 68.[2]  The notice of forfeiture advised Jewell that in order to avoid forfeiture, any person having or claiming an interest in the property must file a statement of interest or right in compliance with Rule C(6)(a) of the Supplemental Rules for Certain Admirality and Maritime Claims, Federal Rules of Civil Procedure.  Docket 13.  Jewell was further informed that such statement of interest or right had to be filed no later than thirty days after the date of the government's complaint or as of the date of final publication of the notice of the filing of the complaint, whichever was earlier.  Id.  Also, the notice advised Jewell that any person having or claiming an interest in the property must serve and file his answer to the

---

[2] The court notes that Jewell must have been served a copy of the verified complaint because the record does not indicate that there was an amended verified complaint filed in this case.

2

verified complaint within twenty days after the filing of the statement of interest or right.  Id.

On February 14, 2006, Jewell filed a verified answer to the verified complaint of forfeiture, asserting that he was an innocent owner of the funds seized in this action.  Subsequently, on September 25, 2006, government counsel emailed Jeffry Finer, one of Jewell's attorneys, and opined that Jewell had not complied with the applicable rules which required him to file both an answer and a verified claim.  Leigh Talley, another of Jewell's attorneys, contacted government counsel and asked her whether the government's email was referring to a failure to comply with the rules for failing to file an answer or a claim.  Government counsel indicated that she was referring to a claim. Then, Talley informed government counsel that they had filed a claim with the FBI and offered to send the government a copy.  As a result, government counsel received a copy of the claim.  Docket 59-2, Docket 69.

Jewell began representing himself pro se on October 17, 2007.  On November 19, 2007, Jewell filed a claim of right or title statement of interest, which stated that he had an ownership and/or security interest in the defendant property.  Docket 60.  Shortly thereafter, on November 30, 2007, Jewell filed documents supporting his statement of interest.  In this document, Jewell asserted that the defendant property was held by Harvey Dockstader; that Dockstader had entered into a contract with him to purchase

3

two of his companies, DataPort, Inc. and Turbo ISP, Inc.; that Dockstader was in breach of that contract; and that Dockstader had released the claims to the defendant property to him.  Docket 63.  About a week later, the government filed a motion to strike and for default judgment.  Jewell responded to the motion,[3] and the government filed a reply.  Docket 66, Docket 59, Docket 82.

## DISCUSSION

In the context of civil forfeiture actions, the ownership interest of the party contesting the forfeiture is considered on two levels:  a claimant must satisfy both Article III and statutory standing.  <u>United States v. One Lincoln Navigator 1998</u>, 328 F.3d 1011, 1013-14 (8th Cir. 2003).

## I.      Article III Standing

Article III standing is a threshold inquiry in every federal case.  The court determines whether an individual has Article III standing.  " '[T]he question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue.' "  <u>Id.</u> at 1013 (citation omitted).  More specifically, "[i]n a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in

---

[3] The court notes that Jewell filed his response to the government's motion to strike and for default judgment before the government actually filed its motion.  The court is assuming that Jewell filed his response before the government filed its motion because the government filed a similar motion in another forfeiture case involving Jewell as an alleged interested third party and both case numbers appear on Jewell's response.  The court will treat Jewell's response as if it was filed in the correct sequential order.

the property to create a case or controversy."  Id.  But "[t]his threshold burden

is not rigorous: 'To have standing, a claimant need not prove the underlying

merits of the claim.  The claimant need only show a colorable interest in the

property, redressable, at least in part, by a return of the property.' "  Id.

(citation omitted).  Colorable ownership interest may be established in a

variety of ways, including "showings of actual possession, control, title and

financial stake."  Id. (quotations and citations omitted).  Eighth Circuit law is

clear that, in the context of the Article III standing inquiry, "ownership

interests are defined by state law."  United States v. Premises Known as 7725

Unity Ave., N., Brooklyn Park, Minn., 294 F.3d 954, 956 (8th Cir. 2002).

Here, Jewell has claimed an interest in the defendant property and has

produced documents in support of his claim.  Jewell represents that the

defendant bank accounts were held by Harvey Dockstader and that

Dockstader assigned the right to these funds to him.  Docket 63.  The court

finds that Jewell has established Article III standing because he has

demonstrated a colorable interest in the defendant property; however, this

does not mean that he has proven the underlying merits of the claim.

## II.    Statutory Standing

To establish statutory standing, a claimant must comply with the

procedural requirements set forth in Supplemental Rule C(6)(a) and 18 U.S.C.

§ 983(a)(4)(A).

## A.      Supplemental Rule C(6) Requirements

Pursuant to Supplemental Rule C(6)(a)(i),[4] in a civil forfeiture case,

> a person who asserts an interest in or right against the property
> that is the subject of the action must file a verified statement
> identifying the interest or right:
>> (A) within 30 days after the earlier of (1) the date of
>> service of the Government's complaint or (2)
>> completed publication of notice under Rule C(4), or
>> (B) within the time the court allows.

Further, any person who files a statement of interest or right against the

property must serve an answer within twenty days after filing the statement.

Supplemental Rule C(6)(a)(iii).

The filing of a verified claim, as required by the Supplemental Rule C(6)

"is no mere procedural technicality."  United States v. $23,000 in United

States Currency, 356 F.3d 157, 163 (1st Cir. 2004).  "It forces claimants to

assert their alleged ownership under oath, creating a deterrent against filing

false claims."  Id.  In addition, the verified claim "serves as the means of

establishing statutory standing in forfeiture actions."  United States v.

$31,852.38 in United States Currency, 183 Fed. Appx. 237, 240 (3d Cir.

---

[4] Supplemental Rule C(6) had been amended with the changes becoming effective on December 1, 2006.  But as the government points out, the United States Supreme Court, in approving the amendment, stated that the amendments shall govern pending proceedings "insofar as just and practicable." Supplemental Rule C(6) was amended to allow claimants only ten days to file a verified statement of right or interest instead of thirty days.  Under the circumstances of this case, application of the ten-day deadline instead of the thirty-day deadline would not be just and practicable as envisioned by the Supreme Court.  Accordingly, the court will apply Supplemental Rule C(6) as it existed at the time the government filed its verified complaint.

2006).  A verified claim "provides 'the government with timely notice of a claimant's interest in contesting the forfeiture and, by requiring a sworn claim, to deter the filing of false claims.' " United States v. $125,938.62, 370 F.3d 1325, 1328 (11th Cir. 2004).

The requirement in Supplemental Rule C(6) that both a claim and an answer be filed is "plain and unambiguous." United States v. United States Currency Totalling $3,817.49, 826 F.2d 785, 787 (8th Cir. 1987).  Strict compliance with Supplemental Rule C(6) requires both a claim and an answer. United States v. Ford 250 Pickup 1990, 980 F.2d 1242, 1245 (8th Cir. 1992). The Eighth Circuit has repeatedly held that it is not an abuse of discretion for district courts to require strict compliance with Supplemental Rule C(6).  See Ford 250 Pickup, 980 F.2d at 1244 (affirming a district court's finding that the claimant did not have standing to assert the claim because he had not filed an answer in accordance with Supplemental Rule C(6) and had not demonstrated excusable neglect, mitigating circumstances, or a good faith attempt to comply); United States v. One Parcel of Property Located at RR2, Independence, Iowa, 959 F.2d 101, 104 (8th Cir. 1992) (affirming a district court's grant of default judgment because the claimants' claims did not comply with the verification requirement of Supplemental Rule C(6) and the government's motions to strike claimants' claims and answers were unresisted); and United States v. Beechcraft Queen Airplane, 789 F.2d 627,

630 (8th Cir. 1986) (affirming a district court's holding that required strict compliance with Supplemental Rule C(6) and struck the claimant's answer because it was not preceded by a verified claim).  The Second Circuit has also noted that strict compliance with Supplemental Rule C(6) is "typically required."  United States v. Amiel, 995 F.2d 367, 371 (2d Cir. 1993).  But while Supplemental Rule C(6) has time restrictions on the filings of verified claims, it is significant to note that if a claimant does not file his verified claim within the deadline, he may do so within the time the court allows.  See Supplemental Rule C(6)(a)(i)(B).

### B.    Extension of Time for Filing Verified Claim

Jewell filed a verified answer in response to the government's verified complaint of forfeiture on February 2006.  Subsequently, on November 19, 2007, Jewell filed a claim of right or title statement of interest and three days later filed support for his claim of interest in the defendant property.  Because Jewell filed a claim of right or title statement of interest and a brief response to the government's motion to strike, the court will consider these documents together as a motion to extend the deadline to file his verified claim.

A court has discretion in appropriate circumstances to deviate from the strict compliance standard.  In fact, the Eighth Circuit has determined that a claimant can avoid the strict requirements of Supplemental Rule C(6) if the claimant demonstrates excusable neglient, mitigating circumstances, or a

good faith attempt to comply with the requirements.  <u>Ford 250 Pickup 1990</u>,
980 F.2d at 1244.  Further, courts in other circuits have determined that
while a district court may require strict compliance with Supplemental Rule
C(6), the court may exercise its discretion by extending the time for the filing
of a verified claim.  <u>See</u> <u>United States v. $125,938.62</u>, 370 F.3d 1325, 1329-
30 (11th Cir. 2004) (stating that while a district court may require the claimant
to strictly comply with procedural rules in a civil forfeiture action, the court
may exercise its discretion by extending the time for the filing of a verified
claim); <u>United States v. United States Currency in the Amount of $103,387.27</u>,
863 F.2d 555, 563 (7th Cir. 1988) (finding that it is proper for a district court to
allow an extension of time to amend a claim of ownership when the claimants
made a good faith effort to file a claim and the government would not be
prejudiced by the ruling); <u>United States v. 1982 Yukon Delta Houseboat</u>, 774
F.2d 1432, 1435-36 (9th Cir. 1985) (determining a district court could exercise
discretion to extend the deadline for filing a claim where the claimant filed an
answer but no verified claim); and <u>United States v. $14,605 in United States</u>
<u>Funds</u>, 2007 WL 3027395, at *1 (M.D. Ga. Oct. 15, 2007) (noting that even
though a district court may require claimants to strictly comply with the rule's
requirements, the court may exercise its discretion by extending the time for
the filing of a verified claim).

When determining whether to exercise such discretion, district courts have considered numerous factors including: "the time the claimant became aware of the seizure, whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant [property] before the claim deadline, whether the Government would be prejudiced by allowing the late filing, the sufficiency of the answer in meeting the basic requirements of a verified claim, and whether the claimant timely petitioned for an enlargement of time." $125,938.62, 370 F.3d at 1329. In evaluating these factors, the district court should also consider the amount seized. Id.

Here, the government received timely notice of Jewell's interest in contesting the forfeiture when he filed his verified answer in response to the verified complaint. Jewell's verified answer, which was filed within the necessary time frame, notified the government of Jewell's alleged interest in the defendant property[5] and of his position regarding his interest. Thus, the government was made aware early that Jewell was alleging an interest in the seized bank accounts. Even if the verified answer did not put the government on notice about Jewell's claim, the administrative claims that Jewell originally filed with the FBI and turned over to the government notified the government

---

[5] The court notes that Jewell used the phrase "defendant funds" in his verified answer. Because there are only two defendant bank accounts in this action, such use of the phrase indicates that Jewell was asserting an interest in both bank accounts.

of Jewell's interest.  Based upon his verified answer and administrative claims, the government had knowledge of Jewell's interest in the defendant property. Additionally, the government's motion to strike was filed over a year after Jewell filed his administrative claims with the government.  In the meantime, the parties expended time and money engaging in discovery and litigating this case.  It is also significant that the amount seized in this case was substantial, totaling over $100,000.

Further, there is nothing in the record to suggest that the government would be prejudiced by the late filing of a verified claim.  In this case there does not appear to be any reason to impose such a harsh penalty on the claimant, particularly where the procedural errors can be resolved with the filing of a verified claim.  Furthermore, "[t]he district court should be wary to not confer the sins of the attorney unto the claimant in a civil forfeiture case, especially when the prejudice to the government, if any, is slight." $125, 938.62, 370 F.3d at 1329.  Here, Jewell's attorney represents to the court that it has been his practice in civil forfeiture actions to combine the verified claim and answer into one document and that such practice has been sufficient in the past.  Also, Jewell's attorney states that when the government brought the sufficiency of the verified answer to his attention, he thought he had cured the alleged insufficiency by providing the government with the claims he filed with the FBI.  If Jewell's attorney had known that the government considered the

11

verified answer insufficient even after the additional production of claims filed with the FBI, he would have cured any pleading deficiencies.

In sum, while the court does not minimize the importance of strict compliance with Supplemental Rule C(6), it concludes that under the circumstances of this case, Jewell should be allowed an extension on the verified claim deadline.  In support of that conclusion, the court notes that Jewell filed a verified answer within the time required for filing a claim, Jewell's standing and interest in the defendant property was known to the government at all times, and no prejudice will result to the government.

Moreover, it is proper to exercise discretion to grant additional time to file a verified claim as long as the goals underlying the time restriction and the verification requirement are not thwarted.  $103,387.27, 863 F.2d at 561-62.  The purpose of Supplemental Rule C(6) is to make the court aware of the fact that there is a claimant to the property who wants it back and intends to defend it.  More specifically, the purpose of the time limit is to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay.  See United States v. Three Parcels of Real Property, 43 F.3d 388, 392 (8th Cir. 1994).

Here, Jewell's timely verified answer informed both the court and the government of his claim to an interest in the defendant property.  For over one

12

year, everything has proceeded in the same manner as it would have had Jewell properly filed a verified claim.  The parties have conducted discovery and engaged in discovery motion practice.  The goals behind the time restriction would not be defeated by allowing the late filing.  Thus, because the purpose of Supplemental Rule C(6) had been fulfilled, there is no policy reason to prevent the case from proceeding.  Accordingly, the court finds that Jewell shall be granted until **June 4, 2008**, to file a verified claim that fully complies with Supplemental Rule C(6).  The verified claim should include language such as, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."  <u>See</u> 28 U.S.C. § 1746.  Based on the foregoing, it is hereby

ORDERED that the government's motion to strike and for default judgment (Docket 66) is denied without prejudice.  In the event Jewell fails to file a verified claim by June 4, 2008, the government may renew its motion to strike and for default judgment.

Dated May 14, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

13