UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIV. 06-4016-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TWO BANK ACCOUNTS | ) | ORDER GRANTING IN PART |
| DESCRIBED AS: | ) | GOVERNMENT'S MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| Bank Account | ) | |
| In the amount of $197,524.99 | ) | |
| Bank of America | ) | |
| Seattle, Washington | ) | |
| | ) | |
| Bank Account | ) | |
| In the amount of $20,537.42 | ) | |
| Bank of America | ) | |
| Seattle, Washington | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| | ) | 06-4005 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| 11 BANK ACCOUNTS | ) | |
| DESCRIBED AS: | ) | |
| | ) | |
| Certificate of Deposit | ) | |
| In the amount of $100,383.56 | ) | |
| Minnwest Bank | ) | |
| Luverne, Minnesota | ) | |
| | ) | |
| Certificate of Deposit | ) | |
| In the amount of $100,404.11 | ) | |
| Minnwest Bank | ) | |
| Tracy, Minnesota | ) | |

Certificate of Deposit                    )
In the amount of $100,410.96              )
Minnwest Bank                             )
Montivideo, Minnesota                     )
                                          )
Certificate of Deposit                    )
In the amount of $100,465.75              )
Minnwest Bank                             )
Ortonville, Minnesota                     )
                                          )
Bank Account                              )
In the amount of $18,015.75               )
Minnwest Bank                             )
Ortonville, Minnesota                     )
                                          )
Bank Account                              )
In the amount of $76,543.07               )
Minnwest Bank                             )
Ortonville, Minnesota                     )
                                          )
Bank Account                              )
In the amount of $4,292.51                )
Brookings Federal Bank                    )
Brookings, South Dakota                   )
                                          )
Certificate of Deposit                    )
In the amount of $100,438.00              )
Minnwest Bank                             )
Redwood Falls, Minnesota                  )
                                          )
Bank Account                              )
In the amount of $170,122.48              )
American Express                          )
Minneapolis, Minnesota                    )
                                          )
Bank Account                              )
In the amount of $2,693.54                )
Bank of America                           )
Seattle, Washington                       )
                                          )
Bank Account                              )
In the amount of $54,529.99               )
Bank of America                           )
Seattle, Washington                       )
                                          )
          Defendants.                     )

2

The government moves for summary judgment as to four bank accounts that it has seized pursuant to a civil forfeiture action: a bank account in the name of Black Rhino, located at Bank of America, Seattle, Washington, in the amount of $2,693.54 (Black Rhino account); a bank account in the name of Mountain Aire Equity, located at Bank of America, Seattle, Washington, in the amount of $54,429.99 (Mountain Aire Equity account); a bank account in the name of Dataport, located at the Bank of America, Seattle, Washington, in the amount of $197,524.99 (Dataport account); and a bank account in the name of Turbo ISP, located at the Bank of America, Seattle, Washington, in the amount of $20,537.42 (Turbo ISP account).  Jewell, a purported interested claimant, appearing pro se, objects to the motion.  The motion is granted in part.

## FACTUAL BACKGROUND

The government initiated <u>United States v. Eleven Bank Accounts</u>, Civ. No. 06-4005, a civil forfeiture action, by filing a verified complaint on January 12, 2006, and an amended verified complaint on January 19, 2006.  The original complaint listed twelve defendant bank accounts, including three bank accounts in Seattle, Washington.  The amended complaint removed one of the Seattle bank accounts in the amount of $10,619.42 from this action.  Additionally, the original complaint listed the three Seattle bank accounts as being in the name of Timothy Jewell.  The amended complaint listed the remaining two Seattle bank accounts as being

3

in the name of Black Rhino and Mountain Aire Equity.  Docket 1 and

Docket 5.

The government initiated a second civil forfeiture action, <u>United States</u>
<u>v. Two Bank Accounts</u>, Civ. No. 06-4016, by filing a verified complaint for
seizure of two defendant bank accounts on January 20, 2006.  The bank
accounts included one account in the amount of $197,524.99 located at the
Bank of America in Seattle, Washington, maintained in the name of
Dataport and a second account in the amount of $20,537.42 located at the
Bank of America in Seattle, Washington, maintained in the name of Turbo
ISP.  Docket 1.  The court consolidated the two actions.  Civ. No. 06-4016,
Docket 150.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that
summary judgment "should be rendered if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is no genuine
issue as to any material fact and that the movant is entitled to judgment as
a matter of law."  Fed. R. Civ. P. 56(c).  Only disputes over facts that might
affect the outcome of the case under the governing substantive law will
properly preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477
U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary
judgment is not appropriate if a dispute about a material fact is genuine,

4

that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

### I.   United States v. Eleven Bank Accounts, Civ. No. 06-4005

#### A.   Interested Claimants

In a civil forfeiture action, any party alleging an ownership interest in the seized property may contest the forfeiture.  In this case, two individuals, Robert Woldt and Timothy Jewell, filed statements of ownership interest.

##### 1.   Robert Woldt

Robert Woldt filed a verified answer to the amended verified complaint on February 10, 2006, and almost two years later, on October 18, 2007, the

government moved to strike Woldt's verified answer for failure to comply
with the requirements of 18 U.S.C. § 983(a)(4) and Rule C(6) of the
Supplemental Rules for Certain Admiralty and Maritime Claims.  Docket 11
and Docket 83.  About a month after the government filed its motion to
strike, Woldt filed statements of interest and claims of ownership in nine of
the eleven defendant property bank accounts.[1]  Dockets 103-112.  On
November 26, 2007, the court granted the government's motion to strike the
answer of Woldt, finding that Woldt failed to timely file a verified answer or
verified statement of interest, and ordered Woldt's answer be stricken from
the record.  Docket 114.  Soon thereafter, on December 12, 2007, the
government moved to dismiss or, in the alternative, to strike Woldt's
statements of interest and claims of ownership.  Docket 131.  Magistrate
Judge Duffy recommended that the government's motion to strike Woldt's
claims be granted because Woldt had not responded to the government's
motion, had not moved the court for an extension of time, and had not given
any reason explaining why his claims were filed in such an untimely
manner.  Docket 152.  The court adopted Magistrate Judge Duffy's report
and recommendation, granted the government's motion to strike Woldt's
claims, and ordered that Woldt's claims be stricken from the record.  Docket

---

[1] Woldt filed a statement of interest and claim of ownership in relation to
the defendant bank accounts in the amounts of $100,410.96; $100,404.11;
$100,383.56; $76,543.07; $100,438.00; $100,465.75; $18,015.75; $4,292.51;
and $170,122.48.  Dockets 103-112.  He did not claim an interest or
ownership in relation to the Black Rhino or Mountain Aire Equity accounts.  Id.

210.  Subsequently, the government filed an application for clerk's entry of
default as to Woldt, and the clerk entered default judgment as to Woldt.
Civ. No. 06-4016, Docket 154 and Docket 157.  The government also moved
for entry of default judgment as to Woldt, and the court granted that motion
and entered an order of default judgment as to Woldt.  Civ. 06-4016, Docket
181.

### 2.    Timothy Jewell

Timothy Jewell filed a verified answer to the amended verified
complaint on February 14, 2006, and almost two years later, on October 18,
2007, the government moved to strike Jewell's verified answer for failure to
comply with the requirements of 18 U.S.C. § 983(a)(4) and Rule C(6) of the
Supplemental Rules for Certain Admiralty and Maritime Claims.  Docket 13
and Docket 88.  A month after the government filed its motion to strike,
Jewell filed a claim of right or title statement of interest, stating that he
believed that he has an ownership and/or security interest in ten of the
eleven defendant property bank accounts.[2]  Docket 97.  Approximately one
week later, Jewell filed a support statement of interest with regards to the
Black Rhino bank account, Mountain Aire Equity bank account, and a bank

---

[2] Jewell claimed an ownership and/or security interest in the Black
Rhino and Mountain Aire Equity accounts.  Docket 97.  Jewell also claimed an
ownership and/or security interest in the bank accounts in the amounts of
$100,383.56; $100,404.11; $100,410.96; $100,465.75; $18,015.75;
$76,543.07; $100,438.00; and $170,122.48.  But he did not claim an
ownership and/or security interest in the bank account in the amount of
$4,292.51.  Id.

account in the name of Transworld Refinancing Establishment Inc., located at American Express, Minneapolis, Minnesota, in the amount of $170,122.48 (Transworld account).  Docket 116.

Soon after Jewell filed his support statement of interest, the government moved to strike Jewell's "Claim of Right or Title Statement of Interest" and "Support Statement of Interest in Claim" for failure to comply with the requirements of 18 U.S.C. § 983 and Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.  Docket 126.  Magistrate Judge Duffy recommended that the government's motion to strike Jewell's claim and support statement be granted in part and denied in part. Magistrate Judge Duffy determined that Jewell's filings had complied with procedural requirements so as to allow Jewell to proceed with his claims to the Black Rhino, Mountain Aire Equity, and Transworld accounts, but that he had not established standing to resist forfeiture of any other defendant bank account.  Docket 150.  Both Woldt and the government objected to Magistrate Judge Duffy's recommendation.  Dockets 159 and 166.

The court adopted Magistrate Judge Duffy's recommendation and granted in part and denied in part the government's motion to strike the answer of Jewell and to strike the claims of Jewell.  The court determined that Jewell's verified answer and claims were sufficient to establish standing in relation to the Black Rhino, Mountain Aire Equity, and Transworld accounts, but that Jewell was required to file a verified claim in relation to

8

these accounts that fully complied with Supplemental Rule C(6).  The court further determined that Jewell did not have standing to contest forfeiture of the other eight accounts because the claims he filed were untimely and insufficient.  Docket 212.  Pursuant to the court's order, Jewell filed a formal verification, which stated that he had an interest in the Black Rhino and Mountain Aire Equity accounts.[3]  Docket 220.

### 3. Todd Jewell

Todd Jewell, Timothy Jewell's brother, has made no filings in this case.  As such, the government filed an application for clerk's entry of default as to Todd Jewell because he failed to file an answer and a verified statement of interest, and the clerk entered default judgment as to Todd Jewell.  Civ. 06-4016, Docket 154 and Docket 157.  The government also moved for entry of default judgment as to Todd Jewell, and the court granted the motion and entered default judgment as to Todd Jewell.  Civ. 06-4016, Docket 181.

### 4. Unknown Potential Claimants

Other potential claimants have made no filings in this case.  Thus, the government filed an application for clerk's entry of default as to all unknown potential claimants because they had failed to file an answer and a verified statement of interest, and the clerk entered default judgment as to all

---

[3] In his formal verified filing, Jewell did not verify that he had an interest in the Transworld account.  See Docket 220.

unknown potential claimants.  Civ. 06-4016, Docket 154 and Docket 157.
The government also moved for entry of default judgment as to all unknown
potential claimants, and the court granted the motion and entered default
judgment as to all unknown potential claimants.  Civ. 06-4016, Docket 181.

In sum, Timothy Jewell is the only interested party remaining in this
case.  He has claimed an interest in only two of the eleven banks accounts:
the Black Rhino and Mountain Aire Equity accounts.

**B.     Jewell's Standing in Relation to the Black Rhino and
         Mountain Aire Equity Accounts**

The government moves for summary judgment as to the Black Rhino
and Mountain Aire Equity accounts, arguing that as a matter of law, Jewell
does not have Article III standing in relation to the two bank accounts.  The
government asserts that Jewell, as the sole corporate shareholder of Black
Rhino and Mountain Aire Equity, cannot have Article III standing in a
corporate bank account because shareholders do not have an ownership
interest in property owned by a corporation.  As a result, the government
argues that a shareholder does not have standing to contest the forfeiture of
assets owned by a corporation.

Jewell, a pro se litigant, responds that the court has already allowed
him to establish that he has a legitimate right to the defendant accounts.
Jewell further points out that he is not familiar with Article III, but that he
is the 100 percent shareholder and also CEO-CFO and Secretary of the

10

corporations in question.  He alleges that he was not involved in an illegal pyramid scheme, but merely charged individuals a monthly fee to use the software he developed.  He also asserts that FBI Agent Matt Miller was untruthful when he obtained his seizure warrant.  Jewell finally asserts that he has already proven that he has standing to contest the forfeiture and requests the court to allow the case to go to a jury trial.

In the context of civil forfeiture actions, the ownership interest of the party contesting the forfeiture is considered on two levels: a claimant must satisfy both statutory standing and Article III standing.  United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013-14 (8th Cir. 2003).  The government is not disputing that Jewell has statutory standing, but instead argues that Jewell does not have Article III standing.

As previously recognized by this court, Article III standing is a threshold inquiry in every federal case.  The court determines whether an individual has Article III standing.  " '[T]he question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue.' "  Id. at 1013 (citation omitted).  More specifically, "[i]n a forfeiture case, a claimant's Article III standing turns on whether the claimant has sufficient ownership interest in the property to create a case or controversy."  Id.  But "[t]his threshold burden is not rigorous: 'To have standing, a claimant need not prove the underlying merits of the claim.  The claimant need only show a colorable interest in the property, redressable, at

11

least in part, by a return of the property.' " Id. (citation omitted).  Colorable ownership interest may be established in a variety of ways, including "showings of actual possession, control, title, and financial stake."  Id. (quotations and citations omitted).

Eighth Circuit law provides that in the context of the Article III standing inquiry, "ownership interests are defined by state law."  United States v. Premises Known as 7725 Unity Ave., N. Brooklyn Park, Minn., 294 F.3d 954, 956 (8th Cir. 2002).  Here, the action was commenced in South Dakota, the two corporations in question are incorporated in Washington, the two contested bank accounts are located in Washington, and the only remaining interested party, Jewell, resides in Wisconsin.  Because this is a federal question case, the court applies federal choice-of-law principles.  See Prudential Ins. Co. of America v. Doe, 140 F.3d 785, 791 (8th Cir. 1998). Before applying federal choice-of-law rules, however, a trial court must first determine whether a conflict exists.  Surgidev Corp. v. Eye Tech., Inc.. 648 F. Supp. 661, 679-80 (D. Minn. 1986), aff'd, 828 F.2d 452 (8th Cir. 1987). The court need not decide which state law applies in this case because the outcome would be the same under all three state laws.

Under South Dakota law, Washington law, and Wisconsin law, the shareholders of a corporation do not own the property of a corporation; the corporation does.  See State v. Mudie, 115 N.W. 107, 110 (S.D. 1908) (stating that "[s]hareholders are not tenants in common or co-owners of the

property of the corporation in any sense; but the title thereto rests in the
legal entity, called the 'corporation' "); State of California v. Tax Commission
of State of Washington, 346 P.2d 1006, 1008 (Wash. 1959) (stating that the
corporation "is the owner of all of the property which the corporation
possesses [and that] [a]n individual shareholder has no property interest in
its physical corporate assets"); and Shepard v. State, 197 N.W. 344, 346
(Wis. 1924) (stating that "[t]he property of a corporation is its property and
not that of the shareholders").  Here, it is undisputed that Jewell, as an
individual, has claimed an interest in the Black Rhino and Mountain Aire
Equity accounts.  Docket 220.  It is also undisputed that these two bank
accounts are maintained in the names of corporations:  Black Rhino, Inc.
and Mountain Aire Equity, Inc.  Further, it is undisputed that Jewell is 100
percent shareholder of both corporations.  See Docket 172-4 at 14-16 and
Docket 172-9.  Accordingly, as a shareholder in both corporations, Jewell
does not own or have an ownership interest in the money located in the
corporations' bank accounts.  Because the bank accounts are in the names
of the corporations, the corporations own the money in these accounts and
it is the property of the corporations.  Therefore, Jewell has failed to
demonstrate a sufficient ownership interest in the bank accounts to create a
case or controversy and, as a result, he does not have Article III standing to
contest forfeiture of the bank accounts.

Further, Jewell's filed claims cannot be construed as claims filed on behalf of the corporation because Jewell filed the verified claims in his own name, not as an agent for the corporation.  Docket 116 and Docket 220. Even if Jewell had filed the verified claims in the name of the corporation, the filed claims still could not be considered as claims filed on behalf of the corporation.  Under South Dakota law, Washington law, and Wisconsin law, a corporation cannot be represented by a pro se shareholder, but must be represented by a licensed attorney.  See Rosebud Federal Credit Union v. Mathis Implement, Inc., 515 N.W.2d 241, 244-45 (S.D. 1994) (Chief Justice Miller, concurring specially) (stating that "South Dakota has no constitutional provision or statute giving an individual stockholder the right to appear pro se to represent a [corporation] in which he is a shareholder [and that] the common-law rule that only a duly licensed counsel may represent a corporation is in force in South Dakota"); Lloyd Enterprises, Inc. v. Longview Plumbing & Heating Co., 958 P.2d 1035, 1038 (Wash. App. 1998) (stating that "[b]ecause corporations are artificial entities that can only act through their agents . . . corporations appearing in court proceedings must be represented by an attorney"); and Jadair Inc. v. United States Fire Ins. Co., 562 N.W.2d 401, 407 (Wis. 1997) (stating that "only lawyers can appear on behalf of, or perform legal service for, corporations in legal proceedings before Wisconsin courts").  Therefore, as a matter of law,

14

Jewell could not file verified claims for the corporations because he is not a licensed attorney retained to represent the corporations.

Moreover, in a similar case, a federal district court determined that a shareholder did not have standing to contest a forfeiture of assets owned by a corporation.  United States v. All Right, Title and Interest in Real Property, Appurtenances, and Improvements Known As 479 Tamarind Dr., Hallandale, Florida, 2005 WL 2649001 (S.D.N.Y Oct. 14, 2005).  In that case, the court found that two claimants had not demonstrated that they had any interest in the defendant property that would confer standing upon them to contest its forfeiture.  The court explained that the claimants' claims to the property were based on their ownership interest in the corporate entity that purportedly held legal title.  The court noted that even if the corporation did in fact own the property, the corporation's shareholders did not have an ownership interest in any specific property owned by the corporation, but rather, they only had an equitable interest in the corporation's collected assets.  Consequently, the court found that the claimants' claims would be duplicative of those of the corporate claimants and, therefore, were barred.  Id. at *4.  As in that case, here, Jewell's claims to the bank accounts are based on his ownership interest of stock in the corporations.  Additionally, as in that case, Jewell, as a shareholder of the corporations, does not have an ownership interest in any specific property owned by the corporations.  Therefore, similar to that case, Jewell has not

15

shown that he has any interest in the defendant bank accounts that would confer standing upon him to contest their forfeiture. As such, Jewell does not have Article III standing to assert an interest in the defendant bank accounts, which are the assets of the corporation.

In sum, Jewell does not have Article III standing in relation to the Black Rhino and Mountain Aire Equity accounts. Accordingly, the government's motion for summary judgment with regards to these two accounts is granted. Because neither Jewell nor any other claimant has filed a verified claim with respect to the nine remaining accounts, no claimants have established standing to contest forfeiture of any of the other nine accounts. Therefore, the government is entitled to forfeit and keep all the money in the Black Rhino and Mountain Aire Equity accounts.

## II.   <u>United States v. Two Bank Accounts</u>, Civ. No. 06-4016

In this case, two individuals, Harvey Dockstader, Jr., and Timothy Jewell, filed statements of ownership interest.

### A.   **Interested Claimants**

#### 1.   **Harvey Dockstader, Jr.**

On July 17, 2006, Harvey Dockstader, Jr. filed a statement of interest or right to the two seized bank accounts. Docket 14. Over a year later, on October 9, 2007, Dockstader filed a Statement of Release in Interest or Right, in which he represented that in negotiations surrounding his default of a purchase agreement, he assigned all interests and claims to the bank

16

accounts to Timothy Jewell and, therefore, no longer had an interest or claim in the seized property.  Docket 49.  The court determined that Dockstader's Statement of Release in Interest or Right was in fact a release of his claim in these proceedings and, therefore, dismissed Dockstader's claim with prejudice.[4]  Docket 52.

Consequently, the government filed an application for clerk's entry of default as to Dockstader because he had released his interest or right in the defendant property, and the clerk entered default judgment as to Dockstader.  Docket 154 and Docket 157.  The government also filed a motion for entry of default judgment as to Dockstader, and the court granted the motion and entered default judgment as to Dockstader.  Docket 181.

### 2.    Timothy Jewell

Timothy Jewell filed a verified answer on February 1, 2006.  Docket 10.  More than a year later, on November 19, 2007, Jewell filed a support statement of interest in claim.  He stated that Dockstader has assigned his claim to the Dataport and Turbo ISP accounts to him.  Docket 63.  Approximately three weeks later, on December 10, 2007, the government moved to strike Jewell's verified answer for failure to comply with the

---

[4] Dockstader clarified that his filing entitled Statement of Release in Interest of Right was a release of all his claims to the defendant bank accounts to Jewell.  He further represented that he no longer had a claim in the case and all previous claims were assigned to Jewell.  Docket 58.

requirements of 18 U.S.C. § 983 and Rule C(6) of the Supplemental Rules of

Certain Admiralty and Maritime Claims and for judgment of default as to

any claims which Jewell may have against the defendant property.  Docket

66.  The court denied the government's motion and gave Jewell additional

time to file a verified claim that fully complied with Supplemental Rule C(6).

Docket 110.  In accordance with the court's order, Jewell filed a document,

verifying and declaring under penalty of perjury that he has a claim in the

Dataport and Turbo ISP accounts.  Docket 115.

### 3.    All Unknown Potential Claimants

Other potential claimants have made no filings in this case.  Thus, the

government filed an application for clerk's entry of default as to all unknown

potential claimants because they had failed to file an answer and a verified

statement of interest, and the clerk entered default judgment as to all

unknown potential claimants.  Docket 154 and Docket 157.  The

government also moved for entry of default judgment as to all unknown

potential claimants, and the court granted the motion and entered default

judgment as to all unknown potential claimants.  Docket 181.

In sum, Timothy Jewell is the only interested party remaining in this

case.  He has claimed an interest in both the Dataport and Turbo ISP

accounts.

### B.      Jewell's Standing in Relation to the Dataport and Turbo ISP Accounts

The government moves for summary judgment in relation to the two defendant accounts.  The government argues that, as a matter of law, Jewell does not have standing to raise claims in the two accounts because the business security agreements entered into by the parties do not give Jewell a colorable interest in the bank accounts.  The government asserts that because Jewell did not have control over the bank accounts, he was an unsecured creditor and, therefore, he does not have standing to make a claim in a civil forfeiture case.  In the alternative, the government argues that Dockstader was acting as an alter ego and the corporate veils of Dataport, Inc. and Turbo ISP, Inc. should be pierced.  The government asserts that once the corporate veils have been pierced, the corporations cannot give a security interest in the corporate assets and Jewell, as an unsecured creditor, would not have standing.

Jewell, as a pro se litigant, responds that he had already established his legitimate right to these bank accounts.  Jewell argues that the collateralized conditions of the purchase agreements of three companies, Dataport, Inc., Turbo ISP, and IntWave, Inc., demonstrate that he has full rights to any bank accounts of these companies or of Dockstader in the event of default.  Jewell emphasizes that he intended to be a secured creditor.

19

The government focuses on the argument that Jewell was an unsecured creditor as to any interest in the Dataport and Turbo ISP accounts, which he claims pursuant to the parties' "business security agreement," and, as a result, he does not have standing to bring claims in a civil forfeiture case.  It is true that Dockstader, as President of Dataport, Inc. and Turbo ISP, Inc., entered into a business security agreement with Jewell in which the corporations assigned a security interest in their collateral to Jewell.  But Dockstader, as President of Dataport, Inc. and Turbo ISP, Inc., also assigned certain rights to the defendant bank accounts to Jewell.  Docket 172-3 and Docket 49.

Here, Dockstader filed a statement of interest or right, asserting that the defendant bank accounts were "the lawful and legal property of Harvey Dockstader Jr."  Docket 14.  Subsequently, Dockstader, as President of Dataport, Inc. and Turbo ISP, Inc., assigned the corporations' "right to receive any of the 'defendant funds' seized in this case."  Docket 49 at 6.  The document further states that the funds are to "pay the indebtedness owed [Jewell] by defendants, with defendants to remain personally liable for the balance of each indebtedness."  Id. at 6.  Due to this assignment, Dockstader filed a statement of release in interest or right, stating he "assigned all interest and right claims to Timothy A. Jewell and therefore no longer [had] an interest and right claim against the [defendant bank accounts]."  Id. at 2.  Consequently, Jewell filed a support statement of

interest in claim, in which he asserted he has a right to the defendant bank accounts because Dockstader released Dockstader's claim to these funds to him.  Docket 63.  Accordingly, Jewell is claiming an interest in the defendant bank accounts based, at least in part, upon Dockstader's assignment of interest.  But, in its brief, the government failed to address the assignment from Dockstader to Jewell and, thus, never discusses whether that assignment was valid to vest Jewell with standing.  See Docket 165.

"Where the party challenging the forfeiture is not the person in possession of the property at the time it was seized, but instead purports to be an assignee of that person, the putative assignee, in order to have standing, must prove that (1) the assignor had a valid ownership interest in the property, and (2) the assignment was valid." United States v. 37.29 Pounds of Semi-Precious Stones, 7 F.3d 480, 483 (6th Cir. 1993), overruled on other grounds, United States v. James Daniel Good Real Property, 510 U.S. 43, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993).  Because the government did not address whether Jewell can make out a prima facie ownership interest pursuant to the assignment sufficient to confer standing on him, the court finds that the record is inadequate to resolve the issue of Jewell's standing in relation to the defendant bank accounts.  As such, the court requests supplemental briefs from both the government and Jewell on this issue.

Accordingly, it is hereby

ORDERED that the government's motion for summary judgment (Docket 171) is granted in relation to the Black Rhino and Mountain Aire Equity accounts in <u>United States v. Eleven Bank Accounts</u>, Civ. No. 06-4005.

IT IS FURTHER ORDERED that the government shall serve and file legal briefs or memoranda addressing whether Jewell has standing based upon Dockstader's assignment in regards to the Dataport and Turbo ISP accounts in <u>United States v. Two Bank Accounts</u>, Civ. No. 06-4016, on or before **January 20, 2009**.  Jewell may serve and file a responsive brief on or before **February 6, 2009**.  The government's reply brief is due by **February 13, 2009.**

Dated December 31, 2008.

BY THE COURT:


/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE